BOHEMIAN MUTUAL LOAN & BUILDING ASSOCIATION OF MIL-
     WAUKEE, Appellant, vs. KUOLT, Commissioner of Bank-
     ing, Respondent.

*December 5, 1916—January 16, 1917.*

*Building and loan associations: Contingent fund.*

Sec. 2014—10, Stats. 1915, provides for but one contingent fund,
    which fund must be kept intact and cannot be apportioned and
    paid on stock of a matured series.

APPEAL from an order of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge.  *Affirmed.*

Action to enjoin the defendant from taking control of the

plaintiff association pursuant to the authority granted by sec. 2014—14, Stats. 1915, providing that

"Should the commissioner of banking find any such association conducting its business contrary to law he shall notify its board of directors in writing of the fact, and if, after thirty days, such illegal practice continues he may take possession of said association and liquidate the same in the manner provided in respect to state banks by section 2022 of the statutes. Should he find that the affairs of any such association are in an unsound condition and that the interests of the public demand the dissolution thereof and the winding up of its business he shall take possession of said association and liquidate the same in the manner provided in respect to state banks by section 2022 of the statutes."

Defendant claims that plaintiff in the distribution of its contingent fund has violated the provisions of sec. 2014—10, Stats. 1915, and therefore he is authorized to take possession of its business. Plaintiff has issued stock in series and has kept a contingent fund account separate as to each series of stock, and in retiring a matured series it paid the stockholders the net amount of the contingent fund account of that series. The defendant claims that only one contingent fund account should be kept and that the fund must be kept intact and cannot be apportioned and paid on the stock of a matured series. The question raised involves a consideration of sec. 2014—10, which reads as follows:

"Quarterly, semiannually, or annually, as may be specified in the by-laws, the gross earnings of the association shall be ascertained, from which shall first be deducted the expenses of the association, and from the balance shall be set aside the fund for the payment of contingent losses hereinafter provided for. The balance of the profits shall be declared as a dividend; the proportionate amounts may be placed to the credit of holders of instalment stock, and holders of paid-up stock may receive their dividend in cash; provided, that if at the time of such dividend period there be not a sufficient amount in the contingent fund for the payment of losses then existing, no dividend shall be declared and no dividend shall

be apportioned or credited on instalment stock and no dividend shall be apportioned, credited or paid on paid-up stock until all losses have been fully paid. Before any dividend shall be declared, credited or paid, at least five per cent. of the net profits shall be set aside as a fund for the payment of contingent losses, until such fund reaches at least five per cent. of the outstanding loans. All losses shall be paid out of such fund until the same is exhausted, and whenever said fund falls below five per cent. of the loans aforesaid it shall be replenished by regular appropriations of at least five per cent. of the net earnings, as hereinbefore provided, until it again reaches said amount. At the close of each fiscal year, and at such other time as the commissioner of banking may direct or the board of directors may determine, it shall be the duty of the president to appoint a committee of five, three of whom shall be members of the board of directors, and two shall be stockholders, not directors, the duty of which committee shall be to schedule the assets of the association, fix their value and determine any losses which may have been sustained, and make a report of all their findings to the board of directors. It shall thereupon be the duty of the board of directors to charge off all losses so reported, and if there be not a sufficient amount in the contingent fund and the net profits for the period for the payment of such losses, then such losses, or the balance unpaid, shall be apportioned according to the number of all shares outstanding, whether instalment or paid-up stock, and the proportionate amount shall be charged to each member."

All the facts sufficient to raise the question at issue appearing from the complaint, the defendant entered a general demurrer thereto, which was sustained, and the plaintiff appealed.

For the appellant there was a brief by *Lenicheck, Robinson & Boesel,* and oral argument by *F. J. Lenicheck.*

The *Attorney General* and *E. E. Brossard,* assistant attorney general, for the respondent.

VINJE, J.    It is evident from the language of sec. 2014—10 that in terms it provides for but one contingent fund for

each association to be created and maintained as therein provided. At the time of its enactment the legislature was familiar with the plan of such associations issuing stock in series. This is evidenced by the fact that sec. 9, ch. 368, Laws 1897, the general act regulating these associations, provides that "When the stock in any series shall have reached its matured value, . . . the holder of unpledged shares in such series shall be paid out of the funds of the association the matured value thereof." And under the law as it then existed such matured stock shared in its proportion of the contingent fund, for sec. 16 thereof provided that "All shares, at their maturity, shall be entitled to receive such share of said reserve fund as the directors may determine, in addition to the amount mentioned in section 9, hereof." The above provision was omitted in the amendment made to sec. 2014—10 by ch. 156, Laws 1899, and has not been re-enacted, though an attempt to do so was made by senate bill No. 252 for 1915, which failed of passage. The bill read:

"Provided that when the capital stock of the association shall be issued in successive series and all the business and affairs of each series are kept separately and all the expenses of the association shall be fully paid and there shall be no losses then existing, the directors upon the maturity of any series shall set aside from the remaining contingent fund the net proportionate share of the same contributed by the shareholders of stock in the matured series and credit and pay the same to the holders of such matured stock."

It will thus be seen that the legislature considered that the matured value of serial stock did not include a share of the reserve or contingent fund because it made separate provision for the distribution of such share; that in amending the law of 1899 the provision for the distribution of such share was omitted, and that in 1915 it refused to re-enact it.

The history of the legislation on the subject, taken in connection with the plain language of the statute, providing for but one contingent fund for each association, the manifest

object of a contingent fund, and the required extent thereof leave no doubt as to the legislative intent that there should be but one contingent fund. Were such a fund to be kept separate for each series of stock and distributed at its maturity, it could never reach five per cent. of the outstanding loans as contemplated by the statute. The banking department has correctly construed the provisions of the law, and the demurrer to the complaint was properly sustained.

*By the Court.*—Order affirmed.